Sheila Woolson, Esq.
**EPSTEIN BECKER & GREEN, P.C.**
150 College Road West, Suite 301
Princeton, New Jersey 08540
(609) 455-1540 (Phone)
(973) 639-8738 (Facsimile)
Attorneys for Plaintiff
Bel Fuse, Inc.

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEL FUSE INC., <br><br> Plaintiff, <br><br> v. <br><br> UNIPOWER, LLC, <br><br> Defendant. | CIVIL ACTION NO. <br><br><br> **COMPLAINT** |

Plaintiff Bel Fuse Inc., ("Bel Fuse" or "Plaintiff") by and through its counsel Epstein Becker & Green, P.C. and by way of this Complaint against Defendant Unipower, LLC ("Unipower" or "Defendant") hereby states as follows:

**PRELIMINARY STATEMENT**

1.  Unipower admittedly owes Bel Fuse more than One Million Dollars pursuant to a manufacturing agreement that the parties entered in 2015. Rather than pay what it indisputably owes Bel Fuse, Unipower has stalled, obfuscated and deflected.

2.  Instead of making any effort to pay any portion of what it owes Bel Fuse, Unipower began claiming that Bel Fuse had

Firm:46263987v3

to provide information and documentation related to production and parts.

3. Bel Fuse, however, had already provided the documentation in its possession and even offered to help Unipower obtain additional information about various part numbers. Not only did Unipower not avail itself of Bel Fuse's offer, it continued to demand documentation that Bel Fuse had already provided.

4. Unipower's demand for documents and information is nothing more than a delay tactic and an effort to stall Bel Fuse from collecting payment.

5. Accordingly, Bel Fuse had no option but to file this Complaint and seek relief from the Court.

## THE PARTIES

6. Plaintiff Bel Fuse is a New Jersey corporation with its principle place of business at 206 Van Vorst Street, Jersey City, New Jersey 07302.

7. Defendant Unipower is a Delaware limited liability company with its principle place of business at 3900 Coral Ridge Drive, Coral Springs, Florida 33065. Upon information and belief, Unipower's sole member is JMC Capital Partners, LLC, which is also a Delaware Limited Liability Company, with its principle place of business at 125 Summer Street, Boston,

Massachusetts 02110. Upon information and belief, the members of JMC Capital Partners, LLC are not citizens of New Jersey.

## JURISDICTION AND VENUE

8.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, Plaintiff Bel Fuse is a citizen of the State of New Jersey, and Defendant Unipower is a citizen of the States of Delaware and Florida and the Commonwealth of Massachusetts.

9.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the parties agreed and irrevocably consented to the "exclusive jurisdiction of the courts of the State of New York and the federal courts of the United States located in New York County". See Ex. A, §15.13(b).

## FACTS COMMON TO ALL COUNTS

10.  In December 2014 and January 2015, Bel Fuse and Unipower entered a series of agreements, including, but not limited to, an Asset Purchase Agreement, a Transition Services Agreement, an Intellectual Property Assignment Agreement, licensing agreements for intellectual property, and the January 23, 2015 Manufacturing Services Agreement ("MSA") at issue in

this matter. A true and accurate copy of the MSA is attached hereto as Exhibit A.

11.  Pursuant to the December 18, 2014 Asset Purchase Agreement, Unipower agreed to purchase the majority of assets associated with Bel Fuse's network power systems business.  That business designed, manufactured, tested and sold power conversion modules or groups of power conversion modules in racks, shelves and cabinets. The modules provide stand-alone electric power conversion to or from a 24 or 48 VDC Bus to or from an AC/DC rectifier, a DC/DC converter or a DC/AC inverter and allow for the exchange of information with power management monitoring devices. Simply put, the systems convert electrical energy from one form to another and allow it to be used or stored.

12.  The Asset Purchase Agreement specifically contemplated that the parties would enter the MSA, pursuant to which Bel Fuse would continue to manufacture the power conversion modules and related equipment ("Products") for Unipower for a limited time. The parties entered the MSA because Unipower did not immediately have the capability to begin manufacturing the Products.

13.  Pursuant to the MSA, Unipower was supposed to issue purchase orders to Bel Fuse. Once accepted by Bel Fuse, the purchase orders became subject to the terms of the MSA.  (Ex. A, §1.3(b))

4

14.   If there was conflict between the terms of the MSA and the terms of the purchase order, the order of priority was the "(i) terms specified on the face of a Purchase Order; (ii) terms of this Agreement, and (iii) terms preprinted on the reverse side of the Purchase Order. (Id.)

15.   Bel Fuse agreed to use "commercially reasonable best efforts to manufacture and sell" to Unipower and Unipower agreed "to purchase, the Products ordered by Purchaser under duly issued Purchase Orders on the terms and conditions provided herein."(Id., §2.1)

16.   The Purchase Price for each Product was defined as "the amount equal to the sum of (i) Seller's standard cost for raw materials and outside vendor processing for such Product, plus (ii) fourteen percent (14%) of such amount." The Purchase Price for custom configurations would be adjusted to reflect the change in material or freight.  (Id., §3.1)

17.   If Bel Fuse provided any supplemental services, such as engineering or design, compensation for those services included the Purchase Price, plus Bel Fuse's out-of-pocket expenses.

18.   Bel Fuse invoiced Unipower for all Products at the time of shipment. (Id., §6.1)

19.   Unipower was obligated to pay Bel Fuse for the invoiced Products within seventy-five (75) days of receipt of

the Products. (Id., 6.2)  This period was subsequently shortened to sixty (60) days by a December 15, 2016 Letter Agreement (the "Letter Agreement"). A true and accurate copy of that Letter Agreement is attached hereto as Exhibit B.

20.  Unipower also granted Bel Fuse possession of the equipment and intellectual property necessary to manufacture the Products. Unipower had acquired same through the Asset Purchase Agreement.

21.  The initial term of the MSA was twenty-four months, pursuant to which the MSA would have expired on January 23, 2017.

22.  The Letter Agreement also purported to extend the term of the MSA. (Ex. B)  The "Last Time Buy", pursuant to the Letter Agreement was extended to September 30, 2017.

23.  However, if one of the parties committed an "Event of Default", the non-defaulting party could terminate the MSA on written notice to the Defaulting Party. (Ex. A., §14.2)

24.  The MSA defined "Event of Default" in relevant part as:

> (i)  Such party fails in any material respect to perform or keep any of its material obligations or covenants hereunder, or otherwise materially breaches this Agreement and fails, in each case, to cure such failure or breach within thirty (30) days or a shorter period if provided for in this Agreement, after its receipt of written notice from the other party.

(Id. §14.2)

25. Termination of the MSA is without prejudice to the non-defaulting parties' remaining rights and remedies. (Id.)

26. Upon termination of the MSA, Unipower is required to purchase (a) all Products subject to open Purchase Orders, or in inventory or safety stock that the parties agreed to maintain at Bel Fuse's standard cost for raw materials plus fourteen percent (14%) and (b) all raw materials in inventory or on open supplier obligations that the parties agreed to be maintained or ordered at Bel Fuse's standard cost. (Id. §14.3)

27. The MSA also contains provisions governing the choice of law and venue. The parties agreed that the laws of New York would apply, without regard to any conflict of laws analysis. They also agreed that any dispute arising from the MSA would be brought in the state or federal courts of New York County. (Id. §15.13)

28. Bel Fuse has fulfilled its obligations under the MSA, but Unipower has not.

**Unipower Has Breached The MSA**

29. Pursuant to the MSA and the Letter Agreement, Unipower's last time to purchase Products from Bel Fuse was September 30, 2017. Nevertheless, Unipower last submitted a Purchase Order in November 2017.

30. Pursuant to the MSA and the Letter Agreement, Unipower was obligated to pay Bel Fuse within sixty to seventy-five days for the Products Unipower purchased and for which it was invoiced, it has failed to do so.

31. On April 20, 2018, counsel for Bel Fuse notified Unipower that its failure to make timely payment constituted an Event of Default under the MSA. A true and accurate copy of that letter is attached hereto as Exhibit C.

32. The April 20, 2018 letter also advised Unipower that Bel Fuse considered the MSA to be terminated, except for open Purchase Orders.

33. Bel Fuse also demanded that Unipower bring its accounts current immediately.

34. On May 3, 2018, Unipower admitted that it "is delinquent in paying outstanding amounts associated with the purchase of remaining program inventory and other manufactured products under the terms of the [MSA]." A true and accurate copy of Unipower's admission is attached hereto as Exhibit D.

35. In its letter, Unipower also admitted that it owes Bel Fuse $491,478 in outstanding invoices for shipped Products and another $495,000 for outstanding orders for Products that have not yet shipped. Id.

36. In fact, Unipower owes Bel Fuse $547,251 for shipped Products.

37. Upon shipment by Bel Fuse of the open orders for Products submitted by Unipower, Unipower is expected to owe Bel Fuse an additional $508,583.

38. Despite claiming that it intends to pay the outstanding balances and its request for a payment plan, Unipower has made only a single payment of $25,000 to Bel Fuse on May 25, 2018 and has otherwise ignored multiple requests to arrange a payment plan.

39. In its May 3, 2018 admission, Unipower claimed that Bel Fuse had not provided it with documentation or assistance regarding a transition to Unipower's new manufacturers, had delinquent repair and warranty work and extended lead time for products (even though Unipower had not paid for the Products anyway). Id.

40. On May 7, 2018, Bel Fuse refuted Unipower's allegations. A true and accurate copy of that letter is attached hereto as Exhibit E. Unipower's material breach of the contract excused any further performance by Bel Fuse.

41. Regardless, Bel Fuse had previously provided Unipower with all of the requested documentation and assistance and invited Unipower to supply it with a list of part numbers and any additional information needed so that Bel Fuse could follow-up, although it was not obligated to do so.

42. Unipower did not respond to this offer and to date has not supplied any information about the parts that it supposedly needs.

43. In its May 7, 2018 letter, Bel Fuse also invited Unipower to discuss a payment plan following an initial good faith payment. Predictably, Unipower has failed to make any such payment, failed to propose a payment plan or respond to the request for additional information about the parts it supposedly needs despite repeated requests by Bel Fuse.

44. It is clear that Unipower's alleged "complaints" are simply an attempt to divert attention from its admitted liability for more than $1 Million Dollars under the MSA.

45. Bel Fuse provided Unipower with a final opportunity to initiate a good faith payment plan. On Thursday May 24, 2018, Bel Fuse advised that if Unipower made an initial payment of $75,000 by Friday May 26, 2018, Bel Fuse would refrain from instituting litigation until after June 1, 2018. This would give the parties an opportunity to work out a payment plan, which would include another payment of $50,000 by June 1, 2018.

46. Unipower did not respond and only made a payment of $25,000 on May 25, 2018, leaving Bel Fuse no option but to institute litigation.

## Count I

### Breach of Contract

47. Bel Fuse repeats and realleges all of the allegations set forth in the preceding paragraphs as if set forth in full.

48. The MSA, as amended by the Letter Agreement, is a valid and enforceable contract.

49. In complete and willful violation of the MSA, Unipower has failed to timely make payment for the Products it contracted for under the MSA.

50. Unipower has admitted that it owes more than $491,000 to Bel Fuse for shipped Products and at least $495,000 for Products that have yet to ship.

51. In fact, even taking into account Unipower's May 25, 2018 payment of $25,000, it still owes Bel Fuse $547,251 for shipped Products.

52. Unipower also owes Bel Fuse another $508,583 for the remaining open orders for Products that have yet to ship, but will be ready to do so shortly. Given Unipower's failure to pay the sums owed for the shipped Products, Bel Fuse anticipates that Unipower will not pay for the Products that have yet to be shipped.

53. As a direct result of UniPower's failure to abide by the MSA and its anticipated continued failure to abide by the

MSA, Bel Fuse has suffered irreparable harm and substantial damages in excess of $1 Million Dollars.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendant, together with damages, fees, expenses, interest and all other relief deemed appropriate and just.

          **EPSTEIN BECKER & GREEN, P.C.**
          Attorneys for Plaintiff
          Bel Fuse Inc.
          By: /s/Sheila Woolson
              SHEILA WOOLSON
              150 College Road West
              Suite 301
              Princeton, NJ 088540
              (609) 455-1540

Dated: June 1, 2018